Frost, J.
delivered the opinion of the Court.
It is unnecessary, in the view taken of this case, to pursue the counsel through the great extent of learning and authority by which the argument has been maintained and illustrated. Two principal questions are presented, to which all the others made in the case, except those which relate to the *316 damages, are incidental. First, did the plaintiffs acquire a good title to the cotton from Smith? and second, had Hilliard a right of stoppage, in transitu, against Smith ?
Apart from the question of Hilliard’s right to slop the cotton, in transitu, was not the sale by Smith to the plaintiffs bona fide and valid ? Any imputation of fraud which might attach to the plaintiffs from notice of the transactions of Smith with Hilliard, is disavowed. The plaintiffs paid Smith the advance agreed on for the transfer, and Smith gave them a delivery order .on Union wharves, where they were stored, for .three hundred and twenty-one bales of cotton, according to the marks specified in the order. The rule of law is, that when there is an immediate sale, and nothing remains to be done by the seller, as between him and the buyer, the property in the thing sold vests in the buyer- — and all the consequences resulting from the vesting of the property, follow; as, if the property be destroyed, the loss must fall on the buye.—Farling v. Baxter, 6 Barn. and Cress. 363. All that was necessary to the vesting of the property in the plaintiffs, was done when the advance was paid to Smith, and the delivery-order given to the plaintiffs. The legal effect of this transaction to transfer the title, is not prevented by the fact that, at the time of the sale to the plaintiffs, Smith had not possession of the cotton. It is very common that goods .are sold before they are delivered to the seller. Most of the cases of stoppage, in transitu, arise from that circumstance. By contract of sale the property vests in the buyer, and at any time afterwards the sale may be completed by the delivery of the goods to the buyer, either by the original seller or by the party from whom the goods were immediately bought The jury were warranted, from the evidence, in finding that Hilliard had agreed to transfer the cotton to Smith before one o’clock of the 9th of January, when Smith transferred it to the plaint tiffs. Smith had told Kerr in the morning that he wished to change the transfer of the cotton. Kerr told Smith, Hilliard’s order would be necessary. Kerr afterwards s%r Hillia'rd, and told him what had passed between himself andTteith. Hill-iard said he had seen Smith, and had arranged it with him. No more is known of what passed between Hilliard and Smith. Afterwards, Kerr told Smith that when the 329 bales were brought, the transfer of the 321 bales would be made from Hilliard to him. The defendants rely on what was thus said by Kerr to Smith, as evidence that, between Hilliard and Smith, it was a condition, precedent to the transfer of the 321 bales, that Smith should deliver the 329 bales. But the act of Hilliard furnishes belter evidence of what was the ar *317 rangement between himself and Smith. At two o’clock, he delivered to Smith an unconditional order for the cotton, though no part of the 329 bales had been delivered. But even if it be admitted that, at the time Smith gave to the plaintiffs the delivery order for the cotton, Hilliard had not ■agreed to change the transfer, that would n'ot invalidate the title of the plaintiffs: If one sell goods in which he has no property at the time of sale, and subsequently acquire a title, ¡the property in the goods, as soon as a title is acquired by .the seller, will vest in the buyer. Then even if Smith had not, by any previous agreemént with Hilliard, acquired any property in the 321 bales, yet when Hilliard, at two o’clock, gave to him a delivery order for the cotton, and it was handed to the wharfinger, Smith then acquired a title to the cotton which he had previously sold to the plaintiffs, and thereby the property in the cotton became vested in the plaintiffs. Hilliard’s title to the 290 bales, delivered on the 10th, can be maintained only on these principles.
The nest question to be considered is, whether the delivery order, which Hilliard gave to Smith, and the deposit of it with Cranston, the wharfiinger, accompanied b}r Cranston’s promise to transfer the 321 bales from, Hilliard to Smith, amounted to a complete transfer of the possession from Ffill-iard to Smith, so as to divest Hilliard of the right of stoppage in transitu.
At common law, a contract for the sale of goods is not complete, without delivery; and, if the sale be not made on time, the title is not changed until the purchase money is paid. The vender has a right to retain the goods until the price is paid. But possession of goods is not always transferred to the buyer at the place of sale. It frequently happens that they are to be carried to the abode of the purchaser. When, in the transit between the seller and the buyer, they are delivered to a carrier or a ware-house man, or other middle ma,n, who is merely a vehicle between the buyer and the seller, the latter, in case of the insolvency of the former, may stop them at any time before they have reached the possession of the buyer. By the contract of sale, in such case the property is vested in the buyer, so as to subject him to the risk of any accident; but he has not an indefeasible right to the possession, and his insolvency, without payment of the lien, defeats that right. Stoppage in transitu, as the term imports, can only take place while the goods are on the way. If they once arrive at. the termination of the carriage, and come into the possession of the consignee, the vender’s right •over them ceases. In most of the cases in which the right *318 of stoppage in transitu has been claimed, the question has been, whether the goods have reached their final destination, and passed into the possession of the purchaser. But in this case the cotton lias not been in transit between the parties to the several-transfers which were made, but remained in the stores on Union wharves. In such case, .the right of the seller to retain, like that of stoppage in transitu, depends on the fact of delivery to the buyer. The right of the seller being in either case substantially the same, and governed by the same rules, the light to retain is very frequently spoken of as stoppage in transitu.
The general rule is, that when goods have not been paid for, the vender, in case of the insolvency of the vendee, may retain them, if they remain in his possession; or, if he has dispatched the goods to the vendee, he may stop them on their way, before they have come to his possession.—Leigh's A. N. P., 1472. If, by the delivery to the wharfinger of Hill-iard’s order on Union wharves for the transfer of the 321 bales to Smith, he acquired an absolute possession of the cotton, Hilliard had no right to retake it. The authorities are strong and conclusive against Hilliard’s claim. In Foster and others, assignees of Fowler, v. Frampton, 6 Barn. and Cress. 107, the defendants, wholesale grocers in London, had sent to Fowler, at Birmingham, some hogsheads of sugar, by one Corbett, a Birmingham carrier. Corbett gave Fowler notice of the arrival, who took samples, and directed that they should remain in Corbett’s ware-house, in which Foster frequently left bulky articles for his convenience — Corbett delivered the sugar to the defendants, who claimed them as subject to stoppage, for the price which was unpaid. It was held that, from the time the bankrupt, directed the sugar to remain in Cor-bett’s ware-house, and took samples, the carrier became the warehouseman of the bankrupt; and the goods were as much in the possession of the latter, as if he had taken them into his own ware-house. In /Scott and others, assignees of Berkley, v. Pettit, 3 Bos. and Pull. 469, goods were sent from Manchester to the bankrupt, addressed to him at the Bull and Mouth Inn, London. %They were carried to the defendant, in pursuance of a general direction, that goods, addressed to the bankrupt, should be sent to the defendapt — the bankrupt, having-no ware-house of his owe, the goods were booked to the account of the bankrupt; and the defendant, without any order to do so, unpacked the goods. The defendant, being indemnified by the sellers, refused to deliver the goods to the plaintiffs. Lord Alvanley, all the Judges agreeing, held that undoubtedly there are cases in which packers and *319 wharfingers are middle men; but there may always be a question, whether, in the particular case, they are to be considered so or not. But it was said to be impossible to raise a doubt in the case, whether the transitus was at an end or not — for if the bankrupt had no ware-house to receive the goods, but that of the packer, the transitus never could be at an end if it did not end there. It was further said, that in all cases where the consignor has been allowed to stop the goods in the custody of the packer, there has been a place of ulterior deposit in view; and that, as there was no place of delivery but the ware-house of the packer, a delivery to the packer was a delivery to the bankrupt himself. In Henry v. Mungles and others, 1 Campb. 452, the defendants, who were ware-house men, sold a quantity of oil, then lying in the ware-houses, to J. S., to be paid for by his acceptance at six months. J. S., having given his acceptance, afterwards sold the oil to the plaintiff, and became bankrupt. The oil, which still remained in the defendants’ possession, was demanded by the plaintiff, which the defendants refused to deliver, because it was not paid for. The clerk denied that the oil had been transferred, on the books of the defendants, to the account of J. S.; but it appeared that the defendants had received ware-house rent of the plaintiff. By Lord Ellenborough: “The acceptance of ware-house rent was a complete transfer of the goods to the purchaser. If I pay for part of a ware-house, so much of it is mine. This is an executed delivery by the seller to the buyer. The goods were transferred to the person who paid the rent, as much as if they had. been removed to his own ware-house, and then deposited under lock and key.” This case presents a distinction', which renders that of Townley v. Crump, 4 Ad. and Ellis, 63, so much relied on by defendants, inapplicable to the present. In that case, it was held that the unpaid vender of goods, remaining in his own ware-house, rent free, may, as between himself and the ven-dee, stop in transitu — although he has given the vendee a delivery order, under which part of the goods have been removed. The case of Harman and others, assignees of Dudley, v. Anderson, 2 Campb. 243, was for 600 casks of butter. The bankrupt had bought the goods in question, then lying in the ware-houses of the defendants, who were wharfingers. The bankrupt received from the sellers an order to deliver the goods, which he lodged with the defendants. The defendants thereupon transferred part of the goods in the books to his name, and debited him with rent. But with respect to one parcel, the facts were, that Dudley, having received the delivery note from the vender, sent it to the defendants, *320 in whose ware-house the goods were lying; and that they neither made any transfer in their books to his name, nor did any thing to testify that they accepted the delivery note,, or held these goods on his account. The plaintiffs had demanded these goods of the defendant, but they refused, and delivered them to the sellers, who claimed to take them in transitu.
It was held, with respect to the parcel which had been transferred to the name of the buyer, that it would shake the best established principles to allow stoppage in transitu; and with respect to the other parcel, that, after the note was delivered to the wharfingers, they became the agents of Dudley, and were bound to hold the goods on account of the purchaser; and that the delivery note was sufficient, without any actual transfer being made in the books. One case more will bb cited—That of Dickson and another v. Yates and others, 5 Barn. and Adol. 86. The plaintiffs had purchased of Yates a quantity of rurfi, then stored in Yates’s ware-house. On the 13th August the plaintiffs sold to Collard 46 puncheons, and took his acceptances at three and four months in payment. Collard applied to the plaintiffs for delivery orders, which they refused to give; but they let Collard have orders at different times for three puncheons. Collard became bankrupt, and the plaintiffs had to take up his acceptances. Collard took samples of the rum, and had the puncheons coopered in Yates’s ware-house, and marked C. On the 28th October, Collard sold 26 puncheons, part of the 46, to Kaye,, who had. the puncheons coopered at Yates’s. In September,. Collard sold 18 puncheons, the remainder of the 46, to Bond and Proctor. After the plaintiffs had taken up the first of Collard’s acceptances, Kaye and Bond demanded from the plaintiff delivery orders for the rum they had bought from Collard; which the plaintiffs refused. The question in the case was, whether the plaintiffs had transferred to Collard possession of the rum, so that they could not retain for the purchase-money unpaid. It was recognized as the mode of delivering, goods sold in ware-houses, in Liverpool, for the seller to deliver to the buyer a delivery order. The defendants relied' on the acts of taking samples, coopering the puncheons, and) marking them, to show a delivery; but they were held insufficient. It was conceded by all the Judges, in giving their opinions, that delivery orders were the- proper evidence of the-transfer of possession; and all of them rested their judgment in favor of the plaintiff’s right to recover, on the ground that he had not, by that mode, transferred the possession to Collard. These cases show that the deposit of goods, when they *321 have reached their destination, in a ware-house, subject to the order and control of the buyer, is an executed delivery, as effectual to defeat the right of stoppage in transitu, as if they had been deposited in the ware-house of the buyer; and that a deposit, in like manner, in the ware-house of the vender, divests his right to retain for the price which may be unpaid; and that a complete possession may be transferred without a removal of the goods, or the exercise of any act of ownership, but by the mere act of delivering an order for the transfer of them to the vendee. The law, thus collected from the adjudged cases, is in conformity with the custom in Charleston. According to the evidence, the universal understanding and usage is, that goods, ware-housed, are transferred by delivery orders, which, when handed to the wharf-inger by the buyer, cannot be countermanded by the seller. The delivery is complete, by the deposit of the order with the wharfinger, and it is evidence of the transfer. On the proof in the case, the transfer of the three hundred and twenty-one bales by Hilliard to Smith was complete, and the delivery executed; and Hilliard's right to detain or stop them in tran-situ., was divested.
It is argued that this case presents an exception to the general rule, because the order of Hilliard, for the transfer of the cotton to Smith, was conditional, and Smith failed to perform the condition. That which, in this objection, is called a condition, was the consideration for the transfer of the 321 bales by Hilliard to Smith — viz., that Smith should replace them by the delivery of 329 other bales of cotton. Every sale is on a condition that the buyer shall pay the purchase money, or render the consideration, whatever it may be, which the seller agreed to accept as the equivalent for his goods. The right to retake exists only when the purchase money is unpaid. But if the payment of the purchase money be construed into a condition precedent to any legal transfer of possession, goods unpaid for may, under all circumstances, be retaken; which is not the law. Smith’s stipulation, to substitute other cotton for that transferred to him by Hilliard, must be treated as an ordinary case of sale, in which the purchase money is unpaid. It is next objected that Hilliard’s order to Smith was insufficient to transfer the 321 bales, because the marks were not specified in the order. The defendants are stake-holders. Hilliard is the true defendant. He cannot make this objection. The cotton for which he gave Smith the order, was the same cotton Smith had transferred to him; and the numbers and marks must have been entered in the wharf-books. It was well known to all the parties, and to Cranston, what cotton was intended by the order. A *322 particular description of the cotton in the order, by numbers and marks, is not necessary, if the particular parcel intended is otherwise well known and ascertained, which was the fact respecting this cotton.
On the subject of damages, the defendants insist, in behalf of Hilliard, that the balance due to the plaintiffs by Smith, oh account of their advance to him, should have been credited with the proceeds of the first sale of the 290 bales, and not with the proceeds of the second sale, on which there was a loss, because the plaintiffs did not obtain the consent of Hill-iard to the resale. Hilliard had no interest in the sale of this cotton, which he had transferred to the plaintiffs, having' received an equal number of bales from Smith in substitution for them. By that arrangement, all his claim to this parcel was determined. Besides, it being held that Hilliard had parted with his lien on the 321 bales, by the transfer of them to Smith, he has no interest in the sale of any part of them; nor can he claim from the plaintiffs, nor from the general as-signee of Smith, any account of the surplus, if there were any, which might remain from the sale of the 321 bales, after payment to the plaintiffs of their advance to Smith.
The defendants claim a verdict, because it appears, by the account current of the plaintiffs with Smith, presented to his assignee, that after charging the advance on the 321 bales, and crediting the nett proceeds of the 290 bales, there remains a balance of $1,600 due by the plaintiffs to Smith. This balance is produced by a credit of $4,000, as received by the plaintiffs from Latham & Co. of Havre. Smith testified that this sum was the balance of a shipment of cotton which he had made to Latham & Co. on his own account and in his own name. The plaintiffs had made an advance to Smith on this cotton, but it did not appear they had any lien on it, nor how they got possession of the fund. It had been included in Smith’s general assignment for the benefit of his creditors, and is demanded of the plaintiff by the assignee. On this proof, the jury may have found that the credit of $4,000 in the plaintiff’s account current had been erroneously given, and that the plaintiffs could not retain it against the assignee. But again adverting to the decision that Hilliard parted with his lien on the 321 bales, which were transferred by Smith to the plaintiffs, in pledge for their advance to him, the assignee of Smith may demand of the plaintiffs that they should account for the 31 bales, parcel of the 321, which have not been applied towards reducing the amount of their advance to Smith; and it would be no answer to the assignee that the defendants had kept them on account of Smith’s debt to Hilliard,
*323 After a careful consideration of the grounds of appeal, it is the opinion of the Court that the motion be dismissed.
Richardson, J. O’Neall, J. Evans, J. and Withers, J. concurred.